**DUANE MORRIS LLP**
A Delaware Limited Liability Partnership
By:   William S. Katchen
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102-5429
(973) 424-2000
*Attorneys for Defendant,*
*George C. Peck*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES A. PAONE, AS COURT APPOINTED RECEIVER OF THE PROPERTY OF DEBORAH PECK,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE C. PECK AND DEBORAH PECK,<br><br>Defendants. | Civil Action No.<br>3:13-CV-01059 (MLC)(LHG)<br><br>**AFFIDAVIT OF GEORGE C. PECK: (A) IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT, AND (B) IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO HIS COUNTERCLAIMS** |

STATE OF FLORIDA         )
                                              SS:
COUNTY OF PALM BEACH  )

GEORGE C. PECK, being duly sworn, hereby deposes and says:

1. I am a defendant in the above-captioned action. I am fully familiar with the facts and circumstances set forth below. I make this affidavit (the "Peck Aff.") in support of my opposition to the motion for partial summary judgment

(the "Motion") filed by James A. Paone, as court appointed receiver (the "Receiver") of the property of Deborah Peck, and in support of my cross-motion (the "Cross-Motion") seeking summary judgment on the counterclaims (the "Counterclaims") asserted in my Answer, Defenses and Counterclaim.

2. On or about November 2, 1987, my sister Joyce Agresti ("Agresti") and I each acquired one-half interest in certain real property located at 20 Vroom Avenue in Spring Lake, New Jersey (the "Property").

3. Agresti and I acquired our respective interests in the Property via transfer from our late parents, George C. Peck and Rose Peck, who had previously owned the Property.

4. The Property itself has been in the Peck family since the late 1950's, and has, at all times, been utilized as a family residence and vacation home.

5. At the time the Property was conveyed to my sister and me by our parents, there existed an implied restraint and condition against any transfer, sale or disposition of the Property without our affirmative consent. This implied restraint and condition existed for the purpose of preventing the loss of the Property, which had been a family asset, specifically dedicated to the restricted and conditional use and enjoyment by the Peck family, as such Property had been previously and continually used from the late 1950's through the time the Property was transferred to my sister and me by our parents.

DM3\2515169.2

6. The Property remained unencumbered and well-maintained from the time my sister and I received it via transfer from our parents in 1987 through and including early December 2009.

7. On or about December 8, 2009, Agresti entered into an agreement (the "Sale Agreement") to sell her half-interest in the Property to my daughter, Deborah Peck ("Deborah Peck") for $1,400,000, the fair market value of such share.

8. On March 2, 2010, pursuant to the Sale Agreement, title to one-half of the Property was conveyed to Deborah Peck. Deborah Peck financed the purchase of her share of the Property with: (a) approximately $400,000 in cash, and (b) purchase money financing in the total amount of $1,000,000.

9. The purchase money financing of $1,000,000 (the "Loan") was provided by Peapack-Gladstone Bank (the "Lender"), conditioned upon: (a) good and unencumbered title in the Property to secure a valid first mortgage (the "Mortgage") against the entire Property; and (b) a joint promissory note (the "Note") in the amount of $1,000,000, executed in favor of and delivered to the Lender, to be executed by Deborah Peck, cosigned by me, and to be collateralized by the Property.

10. On March 2, 2010, the Note and Mortgage were executed and the Loan proceeds were fully paid to Deborah Peck. I did not receive any portion of

the Loan proceeds, nor were any of the proceeds paid to any third party for my benefit.

11. Prior to the execution of the Note, on December 8, 2009, Deborah Peck and I entered into a separate written agreement regarding the pending transaction (the "<u>Agreement</u>"). Specifically, the Agreement notes that "in order to effect the purchase [of her one-half interest in the Property], Deborah [Peck] needs a mortgage of one million dollars," and acknowledges that the Lender "is willing to give [the Loan] so long as George Peck co-signs [the Note] as a guarantor." A true copy of the Agreement is attached hereto as **Exhibit "A"**.

12. Most notably, the Agreement specifically provides that, (despite the co-signing of the Note) Deborah Peck shall be solely responsible for the Loan payments.

13. Specifically, the Agreement states as follows:

> George Peck is willing to co-sign [the Note] so long as Deborah [Peck] will make all of the mortgage payments including interest and principal. Deborah agrees to make all of these payments.

14. Both Deborah Peck and I executed the Agreement. Deborah Peck has confirmed the existence and validity of the Agreement.

15. The Agreement was executed in order to create an enforceable obligation against Deborah Peck for my benefit until Deborah Peck satisfied the Note and Mortgage in their entirety.

4

16. At the time I executed the Note as a co-signer and guarantor, I failed to understand the full impact of allowing the one-half interest in the Property to immediately transfer to Deborah Peck, and having the new deed from Joyce Agresti recorded prior to the satisfaction of the Mortgage in full by Deborah Peck.

17. In executing the Note, I specifically relied upon the Agreement and, in fact, I would not have agreed to co-sign the Note as a guarantor absent the specific Agreement which provided that Deborah Peck would have the responsibility for making the Loan payments.

18. Similarly, I allowed my one-half interest in the Property to be pledged as mortgage collateral to the Lender based upon my complete reliance on the separate Agreement between Deborah Peck and me.

19. As evidenced by the specific terms of the Agreement, I co-signed the Note for the sole purpose of enabling Deborah Peck to purchase a one-half interest in the Property. The transfer of the one-half interest in the Property from Agresti to Deborah Peck was made with the express intent to continue to honor and affirm the existing implied restraint and condition against the transfer, sale or disposition of the Property, as the transfer to Deborah Peck allowed the interest in the Property to remain in the Peck family in accordance with the existing implied restraint and condition.

20. Deborah Peck breached the Agreement in August 2012 by failing to make a requisite mortgage payment and defaulting under the terms of the Note. Since August 2012, I have made all payments due and owing to the Lender under the terms of the Note.

21. I made these payments with the express understanding that Deborah Peck is required to reimburse me for same in accordance with the terms of the Agreement, and to prevent default under the Note and Mortgage.

22. At all relevant times, I only agreed to act as a guarantor of the specific Loan provided by the Lender.  More specifically, at <u>no</u> time have I agreed to provide surety to Frederick Cornelius Komen, Deborah Peck's judgment creditor ("<u>Komen</u>"), or the Receiver, for the liabilities of Deborah Peck.

23. On December 7, 2012, the Receiver filed a complaint (the "<u>Complaint</u>") naming both Deborah Peck and me as defendants, seeking partition and sale of the Property in aid of Komen, a judgment creditor holding a judgment in excess of $800,000 against Deborah Peck.

24. On February 20, 2013, I filed my Answer, Defenses Cross-Claim and Counterclaim (the "<u>Answer</u>"), in which I asserted: (a) a cross-claim against Deborah Peck seeking to impose, on equitable grounds, a resulting trust against Deborah Peck's interest in the Property for any and all of my rights, including rights of equitable subrogation and contribution, senior to all rights of the Receiver

(the "Cross-Claim"), and (b) three separate counterclaims (the "Counterclaims") seeking: (i) a declaratory judgment from the Court that the partition of the Property should be denied where the partition and sale of the Property will defeat the existing implied conditions and restraints against such a sale; (ii) that the Court require that any sale of the Property be conducted by a licensed broker committed to maximizing value, rather than conducted as a distressed sale by the Receiver; and (iii) a declaratory judgment that none of the Receiver's expenses and costs be charged to my interest in the Property or the sale proceeds relating to the Property.

_____
GEORGE C. PECK

Sworn and subscribed before me
on this 22 day of April, 2013

_____
Notary Public



Notary Public State of Florida
Linda Liconti
My Commission EE006145
Expires 08/06/2014

# **<u>EXHIBIT A</u>**

December 8, 2009

This agreement is between George C. Peck Sr. and Deborah M. Peck. Deborah Peck is desirous of purchasing the one half interest in the house at 20 Vroom Ave in Spring Lake, N.J. This one half interest is presently owned by Joyce R. Agresti. In order to effect the purchase Deborah needs a mortgage of one million dollars. The Peapack-Gladstone bank is willing to give her this loan so long as George C. Peck Sr. co-signs the mortgage note as a guarantor.

George C Peck Sr. is willing to co-sign this note so long as Deborah will make all of the mortgage payments including interest and principal. Deborah agrees to make all of these payments.

George C Peck Sr.

Deborah Peck